Taft, J.,
 

 dissenting. The majority opinion recognizes that Section 3414-2, General Code, which is part of the act authorizing the establishment of a taxing district with a board- such as is here involved, requires that the bonds “be issued and sold under the same manner and conditions and within the limitations prescribed by the uniform bond act;” and that the provisions of Section 2293-19, which are a part of the latter act, must be substantially complied with.
 

 The pertinent part of the latter section, which is quoted in the majority opinion, requires that “when it desires or is required by law to submit any bond issue to the electors,” the taxing authority
 

 
 *99
 
 1.
 
 “shall
 
 pass a resolution, declaring the necessity of such bond issue,” fixing its terms and stating the necessity for levying a tax outside of constitutional limitations.
 

 2.
 
 “shall
 
 certify such resolution to the'county auditor” at least 60 days before the election. .
 

 This section then provides that, after receipt of certain advice from the county auditor, the taxing authority, if it still desires to proceed with issuance of the bonds,
 
 “shall,
 
 more than 40 days prior to such election, certify its resolution” to the board of elections.
 

 Thus, it will be noted that Section 2293-19, General Code,
 
 requires
 
 two resolutions. The first resolution, which is to be certified to the county auditor, will be herein referred to as the “auditor’s resolution” and the second, which is to be certified to the board of elections, will be herein referred to as the ‘ ‘ election board resolution.”
 

 An auditor’s resolution and an election board resolution were contained in exhibit 7 which the majority opinion points out was identified as an original record of the board. It is conceded that these were the resolutions which were actually certified to the county auditor and to the board of elections.
 

 However, the Court of Appeals found that exhibit 8 constituted a corrected copy of the board’s actual proceedings. This exhibit 8 also contains an auditor’s resolution and an election board resolution, but the wording of those two resolutions is not the same as the corresponding resolutions in exhibit 7.
 

 The evidence is undisputed that the exhibit 7 resolutions were certified to the county auditor and the board of elections, but the Court of Appeals found that the corresponding exhibit 8 resolutions, and not the ones so certified, were adopted by the board.
 

 
 *100
 
 Thus, the election was held pursuant to resolutions, certified to the county officials, which are now found not to have been the resolutions actually adopted. The Court of Appeals’ holding indicates that incorrect copies of the board’s resolutions were actually certified to the county officials. Anyone who knowingly did this would be guilty of a crime. Section 2293-31, General Code.
 

 The corrections in the resolutions related to the words identifying the taxing authority proposing to issue the bonds and levy a tax to pay them. However, even if the exhibit 7 resolutions, which were admittedly certified to the county officials, could be held to be sufficient in substance to supply a valid foundation for the election, the corrected record of the board, which the Court of Appeals has held to be a true record of the board’s proceedings, does not disclose that those resolutions were adopted by the board. Actually, on the record as it now stands, I do not see how any court can determine whether the resolutions certified to the county officials were the resolutions adopted by the board; or whether the resolutions, found by the Court of Appeals to have been adopted, were the ones so adopted.
 

 The majority opinion refers to State,
 
 ex rel. Board of Education,
 
 v.
 
 Maxwell,
 
 144 Ohio St., 565, 60 N. E. (2d), 183 “as reflecting upon this court’s interpretation of the Uniform Bond Act.”
 

 I believe that the following words of Judge Klapp, used in distinguishing that case, are even more appropriate now than when he used them in his opinion after the trial in the Common Pleas Court:
 

 “It is inconceivable to this court that anyone could contend that the keeping of a proper set of records by a political subdivision in the process of issuing a half million dollars of bonds should be deemed an insub
 
 *101
 
 stantial thing or that a set of records so incomplete and so conflicting as the one before us in the case at bar could be said to be in substantial compliance with the Uniform Bond Act. Such a conclusion would be entirely inconsistent with the letter and the spirit of that act.”